WATKINS, Judge.
This is an appeal of an action brought in district court by Hospital Corporation of America and HCA Health Services of Louisiana, Inc., to obtain judicial review of a determination of an administrative agency (DHHR) that a proposed hospital in Lafayette named “Hamilton Medical Center”, was not in conformity with the standards, criteria, and plans developed pursuant to the Public Health Service Act, and was thus denied approval. The district court set aside the determination of the administrative agency, and remanded the case to the “fair hearing” officer for reconsideration. The State Department of Health and Human Resources (DHHR) through Sandra Robinson, M.D., its Secretary, appealed. We affirm.
(Lafayette General Hospital, Inc., intervened in the present proceedings in district court, and appealed that court’s decision. That appeal was dismissed by us as not timely on a motion to dismiss filed by Hospital Corporation of America, in a decision dated April 14, 1987.) 506 So.2d 938.
On April 17, 1984, HCA was notified by Mr. Harvey J. Fitzgerald, the Undersecretary for the Department of Health and Human Resources that:
Your application for the construction of a new 127-bed acute care general hospital in Lafayette, Louisiana has been reviewed by the Division of Policy, Planning and Evaluation and the Division of Licensing and Certification and has been found not to be in conformity with the standards, criteria, and plans developed pursuant to the Public Health Service Act, and therefore it is recommended to the Secretary, DHHS that amounts attributable to this capital expenditure not be included in payments to this institu *825 tion under Titles XVIII and XIX of the Social Security Act for services furnished.
The said notification of nonconformity provided two reasons for this determination. They pertain to the hospital bed-to-population ratio, and the attainment of a particular measure of need for a CT scanner. The two reasons for disapproval are stated as follows:
1. The proposal does not conform to the State Health Plan goals and objectives relative to bed supply. The proposal exceeds the recommended 4.0/1,000 bed to population ratio for the service area which is defined as State Planning District IV.
2. Applicant fails to identify an un-served population or the ability to obtain 73,000 annual patient days relative to CT services.
On or about May 10, 1984, HCA exercised its right pursuant to 42 C.F.R. § 100.106(c)(1) and the Policies and Guidelines governing the Section 1122 Program in Louisiana, and requested a Fair Hearing to appeal the State’s April 17, 1984, decision to disapprove the Hamilton Medical Center project.
On July 30, 1984, Governor Edwin W. Edwards, exercising the power conferred upon him by virtue of 42 U.S.C. § 1320a-1(b), 42 C.F.R. § 100.104, and P.L. 76-79, issued the following Executive Order:
I hereby direct DHHR to determine the need for acute care general hospital Medical/Surgical beds separately, excluding other specialties in order to determine acute care general hospital Medical/Surgical bed need, and to determine the need for all specialties separately and independently from the needs of other specialties. This interpretation applies to all applications currently under review and to all future applications.
This order modified the way in which the hospital bed-to-population ratio was to be calculated, and allowed for the construction of additional beds which might not have been approvable pursuant to the methodology previously employed by DHHR. Pursuant to this Executive Order, an application calling for the construction of Lafayette Regional Medical Center, an acute care general hospital with 134 medical/surgical beds and 16 ICU/CCU beds and a CT scanner was approved for construction in Lafayette, Louisiana on July 30, 1984. Although the Governor’s Order was explicitly designed to remedy inconsistencies in the review of proposals pursuant to Section 1122 of the Security Act, and notwithstanding the fact that the Governor specified that “this interpretation applies to all applications currently under review and to all future applications,” DHHR refused to apply this rule to the Hamilton Medical Center application which was then under review.
On November 2, 1984, the Hearing Officer assigned to preside at the Fair Hearing affirmed the Agency’s decision, and addressed each of the two reasons given by DHHR for disapproving HCA’s project. In response to HCA’s argument that the Agency’s refusal to apply the Governor’s Order concerning bed need calculation to its application violated statutory and constitutional law, the Hearing Officer stated:
It is clear that a section 1122 Hearing Officer does not have the jurisdictional authority to question the directives of the Governor_ Consequently, a Hearing Officer does not have jurisdictional powers beyond the scope [defined in the DPA Manual]. There exists no statutory authority to support additional jurisdictional powers. As to the first issue, then, I cannot question the authority of the Governor to issue his Directive. This question is presently in litigation. For me to define the limits of the Governor’s power would be tantamount to assuming the role of a district judge....
******
The application and interpretation of the Governor’s Directive is not within my jurisdiction to review. Consequently, the retroactive and equal protection arguments urged by the Applicant must be presented to a district court_
As to the second reason for disapproval, the Hearing Officer initially affirmed the Agency’s finding that HCA had failed to *826 conform to the Resource Goal pertaining to CT scanners. However, on November 8, 1984, HCA petitioned for a Rehearing/Reconsideration on both findings, and on November 26, 1984, the Hearing Officer reversed DHHR as to its finding on the CT scanner.
On November 29, 1984, HCA sought judicial review of the determination, requesting that DHHR’s and the Hearing Officer’s adverse decision be reversed, and that an order issued directing the defendants immediately to notify the United States Department of Health and Human Services and the Regional Health administrator and all other appropriate parties that the Hamilton Medical Center Project is in conformity with all applicable standards, criteria, and plans, and accordingly should be reimbursed the amounts attributable to this capital expenditure through payments to this institution under Titles XVIII and XIX of the Social Security Act.
After all exceptions raised by defendants were denied, this matter was set for briefing and hearing.
On October 30, 1986, the 19th Judicial District Court entered a judgment in favor of HCA, requiring the Department of Health and Human Resources to apply the Executive Order to HCA’s application. The Court reasoned that the rule applied to HCA’s application by its own terms, and thus ordered that the application filed by HCA be re-evaluated in accordance with the duly adopted rule. On November 25, 1986, DHHR appealed from that judgment.
The only difference between an application filed by the Lafayette Regional Medical Center and the application of Hamilton Medical Center was that, at the time of the issuance of the Governor’s Executive Order, the application of Lafayette Regional Medical Center was pending before DHHR, while the application of Hamilton Medical Center was a stage farther in the administrative process, having been denied by the DHHR and gone before a state “fair hearing” officer. As the quoted Executive Order states, the new interpretation applied to “all applications currently under review and to all future applications.” The question arises as to whether or not the application of Hamilton Medical Center could be considered to be “currently under review.” The meaning of the order is obvious. There is no doubt that the application of Hamilton Medical Center, being before a fair hearing officer, was currently under review, as it was under one stage of administrative review.
Since the application of Hamilton Medical Center was currently under review, we hold that the Executive Order, setting new criteria for hospital bed capacity, applies to Hamilton Medical Center.
The fact that the Executive Order on its face applies to Hamilton Medical Center obviates the need to scrutinize the constitutionality under the Louisiana and United States Constitutions of the administrative action taken by DHHR.
However, we do not know on the basis of the record before us whether or not the Hamilton Medical Center meets the requirements of law as interpreted by the Executive Order. The matter was properly remanded by the district court to the fair hearing officer for that determination.
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.